**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

ALBERTO VILLALPANDO,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 10-4051-MWB
(Crim. No. CR 06-4027-MWB)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S § 2255 MOTION**

———————————

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. *The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. *The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   A. *Standards For § 2255 Relief* . . . . . . . . . . . . . . . . . . . . . . . 4
   B. *Procedural Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      *1. Need for an evidentiary hearing* . . . . . . . . . . . . . . . . . . 7
      *2. Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . 8
   C. *Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . 9
      *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . 9
      *2. Failure to challenge petitioner's statements* . . . . . . . . . . 14
      *3. Failure to seek plea agreement* . . . . . . . . . . . . . . . . . . 22
      *4. Failure of appellate counsel* . . . . . . . . . . . . . . . . . . . 23
   D. *Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . 25

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# I.  INTRODUCTION

This case is before me on petitioner Alberto Villalpando's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1), filed on July 7, 2010; on counsel's *Anders* Brief (Civ. docket no. 13), filed by appointed counsel on November 22, 2010; on respondent's Response And Memorandum In Support Of Government's Response To Defendant's Motion (Civ. docket no. 14), filed on December 15, 2011; on Villalpando's *Pro Se* Supplemental Brief (Civ. docket no. 17), filed on July 6, 2011; on respondent's Response To Motion (Civ. docket no. 19), filed on July 29, 2011; and on Villalpando's *Pro Se* Reply (Civ. docket no. 20), filed on September 1, 2011.  Villalpando claims that the attorneys who represented him at the trial level and on appeal provided him with ineffective assistance of counsel in several ways.  The respondent denies that Villalpando is entitled to any relief on his claims.

## A.  The Criminal Proceedings

On May 18, 2006, Villalpando was charged by a two-count Superseding Indictment (Crim. docket no. 20).  Count 1 charged Villalpando with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual methamphetamine and "powder cocaine."  Count 2 charged Villalpando with distribution of 50 grams or more of actual (pure) methamphetamine.  On May 23, 2006, Villalpando appeared in front of Chief United States Magistrate Judge Paul A. Zoss to plead not guilty to both counts of the Superseding Indictment.  *See* Crim. docket no. 25.

Villalpando proceeded to trial on March 5, 2007.  *See* Crim. docket no. 135.  On March 6, 2007, the jury found Villalpando guilty of both counts of the Superseding Indictment.  *See*  Crim. docket no. 141.

Villalpando appeared before me on June 5, 2007, for a sentencing hearing.  *See* Crim. docket no. 160.  I found Villalpando's total offense level to be 34 with a criminal history category of I.  *See* Sent. Trans. at 2.  The advisory guideline range was 151 to 188 months.  *See* Sent. Trans. at 2.  Villalpando objected to an obstruction of justice enhancement and presented a motion for a downward variance.  *See* Sent. Trans. at 2. I found that the government had, with some ease, proved the obstruction of justice enhancement based on Villalpando's untruthful testimony at trial.  *See* Sent. Trans. at 8. Villalpando argued that there should be a downward variance in his case based on his prior history of depression and family circumstances.  *See* Sent. Trans. at 9-10.  After reviewing and considering all of the 3553(a) factors, I determined that a downward variance would not be justified in this case and denied Villalpando's motion.  *See* Sent. Trans. at 12. After expressing concerns about Villalpando's decision to proceed to trial when it appeared that he had been safety-valve eligible, I determined that a sentence of 151 months, at the bottom of the guideline range, would be appropriate.  *See* Sent. Trans. at 16.  Villalpando was therefore sentenced to 151 months on Counts 1 and 2, to be served concurrently.  *See* Sent. Trans. at 16.

### B.  The § 2255 Motion

On June 7, 2010, Villalpando filed this *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1) ("Motion").  On June 10, 2010, an attorney filed an appearance on behalf of Villalpando. (Civ. docket no. 3).  On November 22, 2010, Villalpando's counsel filed a Motion To

3

Withdraw and an attached *Anders* brief.  (Civ. docket nos. 13 & 14).  On July 6, 2011, Villalpando filed a *Pro Se* Supplemental Brief in Support Of § 2255 Motion.  (Civ. docket no. 17).  On July 29, 2011, the respondent filed a Response And Memorandum In Support Of Government's Response To Defendant's Motion Under 28 U.S.C. § 2255.  (Civ. docket no. 19).  On August 1, 2011, Villalpando filed a *Pro Se* Reply (Civ. docket no. 20).

## II.  LEGAL ANALYSIS
### A.  Standards For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States,* 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States.").  Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting

*Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003).

Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, I turn to analysis of Villalpando's claims for § 2255 relief.

## B.  Procedural Matters

### 1.    Need for an evidentiary hearing

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. § 2255.  On the other hand, an evidentiary hearing is necessary where "'the court is presented with some reason to question the evidence's credibility.'" *Kingsberry v. United States*, 202 F.3d 1030, 1033 (8th Cir. 2000) (quoting 1 Liebman and Hertz, Federal Habeas Corpus Practice and Procedure § 19.5, at 723 (3rd ed. 1998); *id.* at 1033 n.6 (also quoting 28 U.S.C. § 2254, Rule 7 advisory committee's note (1994), made applicable to § 2255 by reference, as stating, "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful."); *see also Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001) (holding that the district court abused its discretion in not holding an evidentiary hearing on a § 2255 claim of failure to call alibi witnesses, because the record before the district court "contained sharply conflicting evidence").  Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro*, 538 U.S. at 500, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion.  In this case, I conclude that no evidentiary hearing is required on any issue, other than the allegation that Villalpando received ineffective assistance of counsel because his trial counsel failed to advise him to plead guilty and seek

a plea agreement, because the record conclusively shows that Villalpando's allegations either cannot be accepted as true, because they are contradicted by the record, or because, even if Villalpando's allegations were accepted as true, they would not entitle him to relief. *Buster*, 447 F.3d at 1132.  "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (citing *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations and citation omitted)).

### 2.     Procedural default

Claims are procedurally defaulted if not raised at trial or on direct appeal.  *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) ("Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." (internal citations omitted)); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'" (quoting *Bousley*, 523 U.S. at 622, with citations omitted)).   "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel."  *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal.  *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").   Where possible, I have construed Villalpando's claims as claims of ineffective assistance of counsel and, therefore, will consider them on the merits.

8

### C.  Ineffective Assistance Of Counsel

### 1.    Applicable standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

In a pair of cases handed down just recently, the Supreme Court reiterated the importance of effective assistance of counsel in plea negotiations, the general context in which Barnes alleges that his counsel was ineffective. In *Lafler v. Cooper*, the Supreme Court stated,

> Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *[Missouri v.] Frye, ante*, at 8 [2012 WL 932020 (March 21, 2012)]; see also *Padilla v . Kentucky*, 559 U. S. ___, ___ (2010) (slip op.,

9

at 16); *Hill [v. Lockhart]*, 474, U.S. 52,] 57 [(1985)]. During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson*, 397 U. S. 759, 771 (1970).

566 U.S. ___, ___, 2012 WL 932019, *5 (March 21, 2012). In *Missouri v. Frye*, 566 U.S. ___, 2012 WL 932020 (March 21, 2012), the Supreme Court plainly recognized that plea negotiations are a "critical point" in the course of a criminal proceeding in which effective assistance of counsel is required. 566 U.S. at ___, 2012 WL 932020, at *6-*7.[1]

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning

---

[1]The circumstances in *Frye* and *Lafler* are factually distinguishable from the circumstances presented here, however. As the Court explained in *Lafler*,

> In *Frye*, defense counsel did not inform the defendant of the plea offer; and after the offer lapsed the defendant still pleaded guilty, but on more severe terms. Here, the favorable plea offer was reported to the client but, on advice of counsel, was rejected. In *Frye* there was a later guilty plea. Here, after the plea offer had been rejected, there was a full and fair trial before a jury. After a guilty verdict, the defendant received a sentence harsher than that offered in the rejected plea bargain.

*Lafler*, 566 U.S. at ___, 2012 WL 932019 (March 21, 2012); *see also Frye*, 566 U.S. at ___, 2012 WL 932020 at *8 ("Here the question is whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both."). As explained, below, Barnes argues that counsel's deficient advice led him to *accept* a plea agreement that he otherwise would have rejected.

of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added).  To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

As to the deficient performance prong, "The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689).  Moreover,

> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," [*Strickland*, 466 U.S. at 689], the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.,* at 690, 104 S. Ct. 2052.  To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.,* at 688, 104 S. Ct. 2052.  The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.,* at 690, 104 S. Ct. 2052.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403.  To put it another way,

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S. Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687, 104 S. Ct. 2052.

*Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (quoting *Richter*).  There are two substantial impediments to making the required showing.  First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.").  Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'"  *King*, 595 F.3d at 852-53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

The second prong of the *Strickland* analysis requires the challenger to prove prejudice.  *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (citing *Strickland*, 466 U.S. at 691-92).  "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691).  As the Supreme Court has explained,

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.*  That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403.  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at ___, 2012 WL 932019, at *5 (citing *Frye*, 2012 WL 932020 at *5-*6).  That is, when evaluating a defendant's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  However, even where the petitioner "suffered prejudice from his lawyer's error," he is not entitled to § 2255 relief unless the lawyer's error was also the result of conduct that was professionally unreasonable at the time. *King*, 595 F.3d at 852-53.

The two prongs of the "ineffective assistance" analysis are usually described as sequential.  Thus, if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).  On the other hand, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not

13

inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

### 2.    *Failure to challenge petitioner's statements*

Villalpando generally argues, both *pro se*, and through counsel's *Anders* brief, that his trial counsel failed to challenge incriminating statements that he made to law enforcement officials. *See* Motion at 5; *Anders* Brief at 8-9. Villalpando asserts *pro se* and through counsel's *Anders* brief that his trial counsel failed to challenge statements Villalpando made with regard to a crime other than the crime for which he was arrested as well as statements made in violation of his *Miranda* rights and his Sixth Amendment right to counsel. *See* Motion at 5; *Anders* Brief at 5. Respondent claims that Villalpando "waived his right to remain silent by voluntarily answering questions." Response at 8.

With regard to the suppression of statements, Villalpando argues, *pro se*, that he never acknowledged that he understood his rights, and that this fact, coupled with the fact that he speaks very little or no English, was enough of a reason for his trial counsel to move to suppress any and all incriminating statements given during the police interview. *Pro Se* Supp. Brief at 2-3. Respondent argues that Villalpando waived his right to remain silent by voluntarily answering questions. Response at 8.

Villalpando also argues, through counsel's *Anders* breif, that his waiver was not voluntary because he told the officers during that interview that "I don't want to answer." *Anders* Brief at 12. The respondent asserts that "[a]t no point during the post-Miranda interview did Movant request counsel or express that he no longer wished to participate in the interview." Response at 8-9.

Villalpando further claims, *pro se,* and through counsel, that his statements were coerced because the officers threatened to have his brother arrested. Motion, Mem in

Supp., at 7-8; *Anders* Brief at 14; and *Pro Se* Supp. Brief at 2.  The respondent states that any claim of coercion is belied by the record and that the bathroom break, at which it is alleged threats occurred, happened after Villalpando had already admitted his drug dealings.  Response at 9.

Finally, Villalpando asserts, *pro se*, and in the *Anders* brief, that his waiver was not knowing and voluntary because he was questioned about crimes other than the crime for which he was arrested.  Motion at 4.  The respondent claims that there is no case law to support this claim.  Response at 9-10.

Recognizing that the inherently coercive nature of custodial interrogation "blurs the line between voluntary and involuntary statements," the United States Supreme Court , in *Miranda*, adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination.  *See J.D.B. v North Carolina*, 131 S. Ct. 2394, 2401 (2011) (citing *Dickerson v. United States*, 530 U.S. 428, 435 (2000)).  "Prior to questioning, a suspect 'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has ar ight to the presence of an attorney, either retained or appointed.'"  *Id*. (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  "[I]f a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a 'prerequisit[e]" to the statement's admissibility as evidence in the Government's case in chief, that the defendant 'voluntarily, knowingly and intelligently' waived his rights."  *Id*. (citing *Miranda*, 384 U.S. at 444, 475-476).

The question of whether a defendant understood the *Miranda* warnings is a question of fact, but the ultimate question of whether a waiver was valid is a question of law.  *Bell v. Norris*, 586 F.3d 624, 631 (8th Cir. 2009) (citing *Thai v. Mapes*, 412 F.3d 970, 976 (8th Cir. 2005)).  To be valid, a waiver of the rights protected by *Miranda* must be

voluntary, knowing, and intelligent. *Williams v. Norris*, 576 F.3d 850, 868 (8th Cir. 2009) (quoting *Miranda* 384 U.S. at 444). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *United States v. Vinton*, 631, F.3d 476, 483-84 (8th Cir. 2011) (citing *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)).

There is more than enough evidence in the record in this case to conclude that Villalpando did understand his *Miranda* rights, even though he may not have directly acknowledged that he did. Shortly after the interview began, a spanish speaking officer read Villalpando his *Miranda* rights in spanish. Gov't. Trial Ex. 5a at 1. Although Villalpando claims that when a different officer asked if Villalpando understood his rights, the spanish speaking officer who had read them to Villalpandno responded in the affirmative, while Villalpando did not, the transcript of the recorded interview indicates that just prior to the officer answering this question, and right after the reading of the Miranda rights, Villalpando had responded in the affirmative that he was prepared to answer some questions. Trial Ex. 5a at 1. Although not transcribed, the videotape of the interview also shows Villalpando responding in the affirmative near the conclusion of the reading of his Miranda rights. See, Trial Ex. 5. Further, Villalpando demonstrated that he understood the questions he was asked by responding appropriately as the interview proceeded. For instance, when asked how much cocaine he had had on him, Villalpando provided an amount in ounces. Trial Ex. 5a at 2. When asked where the drugs in his

home were, Villalpando provide a specific location within his home. Trial Ex. 5a at 3. Further, during his trial, Villalpando testified that he had been able to understand the questions that were asked of him during the post-*Miranda* interview. Trial Trans. 2 of 2, at 173. And finally, the Affidavit provided by Villalpando in support of his Motion, states that "I will state for the records that I was properly Mirandized concerning the crime that I was arrested for..." Motion, Mem. in Supp. at11. I am satisfied, after review of the record in this case that the totality of the circumstances reveal that Villalpando demonstrated the "requisite level of comprehension" required pursuant to *Moran v. Burbine,* 475 U.S. 412, 421 (1986) ("Only if the 'totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived); *see also Berghuis v. Thompkins*, 130 S. Ct. 2250, 2262 (2010) (no basis in record to conclude that defendant did not understand his rights and it followed that defendant chose not to invoke or rely on those rights when he did speak).

Villalpando also argues that he invoked his right to remain silent when he said "I don't want to answer." *Anders* Brief at 9-10. "A suspect invokes his right to remain silent by making "a clear, consistent expression of a desire to remain silent." *United States v. Ferrer-Montoya*, 483, F.3d 565, 569 (8th Cir. 2007) (citing *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). "Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*." *Id*. (citing *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995)). "Being evasive and reluctant to talk is different from invoking one's right to remain silent." *Id*. (citing *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001)). Recently, in *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010), in accordance with previous Eighth Circuit Court of Appeals precedent, the United States

17

Supreme Court held that just as an individual's request for counsel must be unambiguous, so must an individual's invocation of the right to remain silent.

Counsel states that, initially, Villalpando said, "I don't want to answer" after the officer told Villalpando "If you don't want to answer something, tell me, 'I don't want to answer.'" *Anders* Brief at 9.  When the officer specifically asked Villalpando if he wanted to answer questions, Villalpando responded, "Well, it depends on the questions you ask." This exchange occurred prior to Villalpando being read his *Miranda* rights.  The record reveals that at one point after Villalpando had been given his *Miranda* warning, he did say, "I don't want to answer,"in response to several questions during the interview.  Trial Ex.5a at 18.  However, this was after Vilallpando had already admitted to his involvement with drugs, had identified other individuals who were involved, and had indicated that he did not want to talk about one particular individual.  Trial Ex. 5a at 18.  Villalpando continued to provide answers to all other questions with no hesitation.  Trial Ex.5a at 18. At most, Villalpando indicated that he was reluctant to talk about one individual, but at no point did Villalpando make a " clear, consistent expression of a desire to remain silent." *United States v. Ferrer-Montoya*, 483, F.3d 565, 569 (8th Cir. 2007) (citing *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989)).

Villalpando argues that his statements were coerced because the officers threatened to have his brother arrested.  Motion, Mem. in Supp. at 7-8; *Anders* Brief at 14, and *Pro Se* Supplemental Brief at 2.  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Vega*, ---- F.3d ----, 2012 WL 1289783, 7 (8th Cir. 2012) (citing *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011)).  Here, there is no evidence that Villalpando's will was overborne by any reference to his brother.  The record reveals that the officers did mention Villalpando's

brother several times during the interview.  First, the officers asked if Villalpando's brother and his roommate would have drugs on them.  Trial Ex. 5a at 19.  When Villalpando answered, "no," the officers moved on to a different topic.  Trial Ex. 5a at 19.  A few moments later, after Villalpando was informed that the officers wanted to search his residence, Villalpando inquired about his brother and his friend and was told that they would not be arrested because Villalpando had said that they had nothing to do with the drugs.  Trial Ex. 5a at 20.  Still later, Villalpando was asked if his brother was with him when he had been arrested the prior week for driving without a license.  Trial Ex. 5a at 27.  Once Villalpando answered that his brother had not been with him, there was no further mention of his brother.  Trial Ex. 5a at 27.  The references to Villalpando's brother occurred after Villalpando had previously incriminated himself and do not appear to have had any affect on his incriminating statements.

At one point, Villalpando indicates that threats were made regarding his brother during a bathroom break that the officers provided to Villalpando.  However, an affidavit provided by his trial counsel indicates that the incriminating statements were made prior to any bathroom break and, again, even if such threats occurred, they would not have had any effect on Villalpando's prior incriminating statements.  *See* Response, aff. of trial counsel, at para. 9.  Further, I find credible the officer's testimony that he did not at any time before the interview or after the interview indicate that Villalpando's brother would be arrested, other than as depicted on the taped interview.  *See* Trial Trans., Vol. 2 of 2, at 162.

The totality of the circumstances does not indicate that the references to Villalpando's brother were coercive.  The interview was not overly long, Villalpando demonstrated that he was rational and articulate through out the entire interview and was

not overly distracted by concern for his brother. *See Williams v. Norris*, 576 F.3d 850, 869 (8th Cir. 2009).

Lastly, Villalpando argues, *pro se*, and in his *Anders* brief, that his waiver was not knowing and voluntary because he was questioned about crimes other than the crime for which he was arrested. Motion at 4. The respondent claims that there is no case law to support this claim. Response at 9-10. Villalpando states that he was arrested for "'possession of four ounces of cocaine' but that without proper warning or the proper Miranda admonition was lead [sic] to admit to an alleged prior crime" involving distribution of methamphetamine. *See* Motion, Ex. at 7. The *Anders* brief, however, acknowledges that a suspect's awareness of all the crimes about which he may be questioned is not relevant to determining the validity of his decision to waive the Fifth Amendment privilege and that an agent's failure to inform an individual of the subject matter of the interrogation could not affect an individual's decision to waive that privilege in a constitutionally significant manner. *Anders* Brief at 18. Respondent argues that Villalponda did not have to be informed of every topic to be covered in a post-*Miranda* interview for his decision to waive his Fifth Amendment privilege to be valid. Response, at 10.

"The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). A waiver can be knowing and intelligent even when police inform a suspect that he would be questioned about one crime, but then question the suspect about another separate crime. *See Willaims v. Norris*, 576 F.3d 850, 868 (8th Cir. 2009). Further, the record here indicates that prior to being read his *Miranda* rights, an officer informed Villalpando that in addition to being asked questions about himself, he would also be asked to talk about other people. Trial Ex. 5a at 1. Because the record

supports a finding that Villalpando's statements were otherwise intelligently and knowingly made, the fact that he was questioned about crimes in addition to the crime he was arrested for, does not change this result.

Villalpando argues that his trial counsel provided ineffective assistance by failing to move to suppress the incriminating statements he made to officers, for all of the above reasons. However, as discussed above, there is no reasonable probability that even if Villalpando's trial counsel had filed a motion to suppress on any of the above grounds, it would have been successful. Because "any prejudice resulting from counsel's alleged failure to file a motion to suppress is determined by the likely success of the motion," Villalponda cannot establish that he suffered any prejudice based on his trial counsel's decision not to file a motion to suppress on any of the above grounds. *See Bramlett v. Lockhart*, 876 F.2d 644, 647 (8th Cir. 1989)(citing *Kellogg v. Scurr*, 741 F.2d 1099, 1104 (8th Cir. 1984)). Further, because I have determined that Villalpando cannot demonstrate that he suffered prejudice, I "do not . . . need to address the performance prong" of Villalpando's claim. *See Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052)."). Villalpando's claim that he received ineffective assistance of counsel on the ground of trial counsel's failure to file a motion to suppress any incriminating statements is denied withour further need for hearing because the record conclusively shows that Villalpando's allegations either cannot be accepted as true, because they are contradicted by the record, or because, even if Villalpando's allegations were accepted as true, they would not entitle him to relief. *Buster*, 447 F.3d at 1132. "No hearing is required where the claim is

inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (citing *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations and citation omitted)).

### 3.    *Failure to seek plea agreement*

Villalpando claims, *pro se*, and in counsel's *Anders* brief, that his defense counsel failed to advise him to plead guilty and failed to secure a plea agreement for him. Motion at 4, *Anders* Brief at 16-17. Respondent argues that this claim is refuted by defense counsel and has attached an affidavit from counsel indicating that trial counsel tried on several occasions to convince Villalpando to plead guilty. Response at 11.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citing *Missouri v. Frye,* 132 S. Ct. 1399 (2012)). "We have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010) (citing *Hill*, 474 U.S. at 57)). Strickland's two-part test applies to ineffective assistance claims arising out of the plea process, including an allegation of ineffective assistance for failure to advise a client of the advantages of pleading guilty. *See United States v. Stevens*, 149 F.3d 747, 747 (8th Cir. 1998) (citing *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) ("even if counsel's performance were somehow inadequate, Stevens failed to establish that there was any reasonable probability that he would have acknowledged his guilt had he been properly advised about the risks of trial.". . ." When he took the stand at the post trial hearing on his new trial motion, Stevens maintained his innocence.")). "Prejudice is possible, notwithstanding a subsequent fair trial, where counsel failed to

provide accurate advice regarding a plea agreement offer.  *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

The parties have taken contradictory positions on whether Villalpando's trial counsel ever discussed the merits of his case with him and advised him to plead guilty and sought a plea agreement for him.  Villalpando states that his trial counsel should have concluded that his case was impossible to win and should have advised him to plead guilty and obtained a plea agreement, but did not do so.  Motion at 4.  However, his trial counsel, by affidavit, states that he discussed the case and the sentencing options with Villalpando on several occasions and that, each time, Villalpando indicated to him that he wanted to go to trial and did not want to plead guilty.  Response, Aff. of Trial Counsel,  ¶¶ 10, 11, 12, 15, 17, and 20.  There is very little other evidence in the record regarding Villalpando's decision to go to trial rather than plead guilty.  At one point during the sentencing hearing, the prosecutor made a professional statement to the court, that "I know Mr. Lancaster went over and over with him fact that he could get half the sentence."  Sent. Trans. pg. 13.  I cannot find that this statement, either standing alone or considered with counsel's affidavit, unequivocally establishes that Villalpando's trial counsel advised Villalpando to plead guilty but was told by Villalpando that he would not plead guilty and insisted on going to trial.  In these circumstances, I will order an evidentiary hearing to resolve this issue.  Moreover, I find that the evidentiary hearing is likely to be more effective and efficient, if I appoint counsel to represent Villalpando, who has been litigating his Motion *pro se* since his previously appointed counsel was allowed to withdraw on May 12, 2011.  *See* Order (Civ. docket no. 16).

### 4.    *Failure of appellate counsel*

Villalpando asserts, *pro se* and in counsel's *Anders* Brief, that he received ineffective assistance of appellate counsel because his appellate counsel disregarded

23

Villalpando's "intent to raise the fifth and sixth amendment violations that took place during his initial arrest and during his unmirandized statements concerning other crime [sic] for which he had not been arrested."   Motion at 6.

Villalpando's appellate counsel, by affidavit, states, "In preparing the arguments on appeal, I carefully reviewed the transcript and bill of exceptions and forwarded all non-frivolous issues, including arguing about the sufficiency of the evidence and the two-point obstruction enhancement."   Response, Aff. of Appellate Counsel, ¶ 11.   Respondent argues that Villalpando's appellate counsel cannot be found ineffective for not raising a frivolous issue on appeal.   *See* Response at 11.

The right to effective assistance of counsel also applies in the first appeal of right. *Reagan v. Norris*, 279 F.3d 651, 657-58, 660 (8th Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 729030, 750 (1991)).   "To prove ineffective assistance of appellate counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and tha tthe deficient performance prejudiced his appeal."   *Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002).   "While a defendant does have a limited due process right to counsel on the first appeal, this right does not impose a duty on the attorney to 'advance every argument, regardless of merit, urged by the defendant.'"   *Evitts v. Lucey*, 496 U.S. 387, 392 (1985) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).   "The deficient performance standard at this stage is rigorous."   *United States v. Brown*, 528 F.3d 1030, 1032 (8th Cir. 2008).   "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal."   *Jones v. Barnes*, 463 U.S. 747, 751 (1983).   Absent contrary evidence, the court "assumes that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy."   *Brown* at 1033 (citing *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998).

For all the reasons stated above, with regard to the suppressions issues, I believe that it would have been frivolous for appellate counsel to have raised such issues on appeal.  Therefore, Villalpando's claim that his appellate counsel provided ineffective assistance, fails.

### D.  Certificate of Appealability

Denial of Villalpando's § 2255 Motion on the grounds of ineffective assistance for failure to file a Motion to Suppress, both at trial and on appeal, raises the question of whether or not he should be issued a certificate of appealability for these claims.  The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> * * *
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b).  In this case, I have not issued a "final order" disposing of Villalpando's § 2255 Motion.  Therefore, I will withhold the determination of whether or not a certificate of appealability should issue on either of the claims raised in Villalpando's § 2255 Motion until after the evidentiary hearing on his claim relating to ineffective assistance of counsel for failure to advise Villalpando to plead guilty and to seek a plea agreement and a "final order" that makes a determination on that remaining claim.

### III.  CONCLUSION

Upon the foregoing, Villalpando's Motion Under 28 U.S.C. § 2255 (Civ. docket no. 1), is **denied in part and ruling is reserved in part**, as follows:

1.     The motion is **denied** as to Villalpando's claim of ineffective assistance of trial counsel for failing to move to suppress incriminating statements at trial and on appeal.

2.     Ruling is **reserved** on Villalpando's claim of ineffective assistance of trial counsel for failing to advise him to plead guilty and procure a plea agreement.

   a.     An evidentiary hearing on this claim will be set by separate order, after the court receives the report of counsel appointed pursuant to paragraph b., below.

   b.     The Clerk of Court shall appoint counsel to represent Villalpando on this claim.  Counsel shall have **to and including June 21, 2012,** to consult with Villalpando and to file a report with the court on whether the evidentiary hearing requires the personal presence of Villalpando or whether his testimony can be taken "live" by telephone.

3.     Ruling is **reserved** on whether a certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 7th day of May, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA